UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES,<br><br>    v.<br><br>JEROME A. VINES,<br><br>    Defendant. | Criminal Action No. 01-399 (CKK)<br>Civil Action No. 05-1900 (CKK) |

**MEMORANDUM OPINION**
(July 6, 2006)

This matter relates to the conviction and sentencing of Petitioner Jerome A. Vines for charges stemming from an incident that occurred on August 9, 2001.  Currently before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Petitioner claims that he is entitled to relief – or, at the very least, an evidentiary hearing – because (1) he received ineffective assistance of counsel in violation of the Sixth Amendment, (2) the prosecutor engaged in misconduct by misleading the Court, the jury and Petitioner, and (3) the Court conspired to deprive Petitioner of his constitutional rights.  The Government opposes Petitioner's motion.  After a careful review of the parties' multiple briefs, the trial record, and the relevant case law, the Court finds that an evidentiary hearing is unnecessary to the resolution of Petitioner's motion.  For the reasons set forth below in this Memorandum Opinion, the Court shall deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

**I: FACTUAL BACKGROUND**

This section 2255 motion arises out of the conviction of Petitioner Jerome A. Vines for several offenses committed by him on August 9, 2001.  The evidence at trial was that Petitioner had spent most of the day with a female companion, Charlene Miller, until he suddenly told everyone to vacate his apartment.  *See* United States' Opposition to Defendant's Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255 ("Gov't's Opp'n") at 2 & Tr. at 2:298-300, 304, 306.[1]

When attempting to leave, Miller found the front gate locked and attempted to convince Petitioner to let her out by sitting on the ground and pretending to cry.  *Id.* & Tr. at 307.  At that time, she heard a click and looked up to see Petitioner pointing a gun at her head; at this point she actually began to cry.  *Id.* & Tr. at 308.  Petitioner then pulled the trigger of the gun, but it misfired, and instead, a bullet jumped out and fell to the floor; thereafter, Petitioner permitted Miller to leave his apartment. *Id.* & Tr. at 307-08.  Although the jury convicted Petitioner based on this evidence, Petitioner contests this account and argues that he never used the gun in a threatening manner towards Miller, though he does not contest that he did have possession of the weapon.  *See* Memorandum in Support of 28 U.S.C. § 2255 Petition to Vacate, Set Aside or Correct Sentence and Discharge Petitioner ("Pet'r Mot.") at 1.  Petitioner did not testify at his trial.

Subsequently, Ms. Miller walked to a nearby bus stop and placed an anonymous 911 call to report a man with a gun in Petitioner's apartment.  *See* Gov't's Opp'n at 3 & Tr. at 2:310.  The Government indicates that the Petitioner followed Miller and attempted to talk her into returning with him to his apartment, an invitation that she declined.  *Id.*  When Miller then attempted to board a bus, Petitioner grabbed her by the neck and pulled her back towards his apartment.  *Id.* & Tr. at 310-12.  The Government also contends that Petitioner threatened to "bust" Miller with his gun right on the spot if she refused to return to his apartment.  *Id.* & Tr. at 312-13.  Upon returning to the apartment with Miller, Petitioner was told by neighbors that the police had stopped by his apartment; Petitioner then hid his gun in a nearby trash can.  *Id.* & Tr. at 314.

_____

[1] References to the trial transcripts herein are by volume number and by page (e.g., Volume I at page 5 is "Tr. 1:5"), or where no volume number is indicated, referenced by date and page (e.g., "2/19/02 Tr. 1").

At the time that Miller placed her 911 call, a radio run call came in to Sergeant Poe and Sergeant Gregory, who arrived at the scene within minutes. Tr. at 1:2. Sergeant Poe witnessed a man screaming at a woman at a bus stop on his way to the apartment but did not recognize the Petitioner at that time. *Id*. at 2. Officer Barnes and Officer Flynn were already on the scene when Sergeants Poe and Gregory arrived. *Id*. Thereafter, Petitioner and Miller returned to the apartment and the officers engaged them in conversation. *Id*. Sergeant Poe testified that he heard the other officers ask Petitioner to enter the apartment, and he granted them permission to do so. *Id*. Upon entering, the officers located a bullet casing on the floor and thereafter escorted Petitioner towards the scout car. *Id*. at 3.

Once Petitioner was taken from the apartment, Miller informed the officers as to the location of the hidden gun, which was thereupon recovered. *Id*. Petitioner was arrested for carrying a pistol without a license and transported to the Third District police station. *Id*. Upon arriving, Petitioner was placed in a holding cell and another policeman, Officer Franchak, came in to speak with Petitioner, who was sprawled out on a chair but awake. *Id*. at 8. Franchak read Petitioner his rights from the PD-47 statement and gave it to him to read. *Id*. Petitioner was told to answer the question and Petitioner did so and signed and dated the form. Franchak indicated that he did not perceive the Petitioner to be intoxicated based upon his appearance, behavior, and speech. *Id*. at 9-10. Petitioner contends that he waived his Miranda rights while he was heavily intoxicated and believes that the Officer could smell the alcohol. *See* Pet'r Mot. at 2. Investigator Mouton, who was present in the holding room and operated the camera that caught the interrogation on video, agreed that the smell of alcohol was present. Tr. at 1:14.

## II. PROCEDURAL BACKGROUND

On November 9, 2001, Petitioner was charged by indictment with unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); assault with a dangerous weapon, in violation of D.C. Code § 22-502; possession of a firearm during the commission of a crime of violence or dangerous offense, in violation of D.C. Code § 22-3204(b); and threatening to injure the person of Charlene Miller, in violation of D.C. Code § 22-2307. A jury found Petitioner guilty on all charges on February, 26, 2002. On December 23, 2002, this Court sentenced Petitioner to a 262 month period of incarceration on the felon-in-possession count, and to 60 months of incarceration on each of the other counts in the indictment, with all sentences to run concurrently. This Court also imposed a five-year period of supervised release for the felon-in-possession count and three year periods of supervised release on each of the other counts, with all supervised release periods to run concurrently.

Petitioner filed a notice of appeal on January 2, 2003 to the United States Court of Appeals for the District of Columbia Circuit. The Court of Appeals affirmed Petitioner's convictions on October 28, 2003 and denied his petition for rehearing and rehearing *en banc* on December 23, 2003. *See United States v. Vines*, 80 Fed. Appx. 113 (D.C. Cir. 2003). The United States Supreme Court denied Vines' petition for a writ of certiorari on March 22, 2004. *Vines v. United States*, 541 U.S. 954, 124 S.Ct. 1697, 158 L.Ed.2d 387 (2004).

On March 14, 2005, Petitioner, *pro se*, filed a Motion for Extension of Time to File a Habeas Corpus section 2255 Motion, and on March 24, 2005, Petitioner filed a Motion for Leave to File Amended Motion Pursuant to 28 U.S.C. § 2255 with a "place holder" motion attached. On March 30, 2005, the Court granted both *pro se* motions. The instant Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody was thereafter filed

on March 30, 2005.

### III: LEGAL STANDARDS

Under Section 2255 of Title 28 of the United States Code, a prisoner in custody sentenced in

a federal court may move the sentencing court to vacate, set aside, or correct the sentence if the

prisoner believes his sentence was imposed "in violation of the Constitution or laws of the United

States . . . or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. §

2255 (2005). The party "seeking to vacate his sentence shoulders the burden of sustaining his

contentions by a preponderence of the evidence." *Smith v. United States*, No. Crim. A. 94-0251,

2005 WL 1313445, at *2 (D.D.C. Jun. 1, 2005) (citing *United States v. Simpson*, 475 F.2d 934,

935 (D.C. Cir. 1973)). A court need not conduct an evidentiary hearing before denying a section

2255 motion when "the motion and files and records of the case conclusively show that the prisoner

is entitled to no relief." *Id.*; *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). As the

rules governing Section 2255 proceedings provide, "[i]f it plainly appears from the face of the

motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled

to relief in the district court, the judge shall make an order for its summary dismissal." Rules

Governing § 2255 Proceedings, Rule 4, 28 U.S.C. foll. § 2255 (2005); *see also Morrison*, 98 F.3d

at 625. The decision to hold an evidentiary hearing before rendering a decision on a section 2255

motion is committed to the judge's discretion when the judge "also presided over the trial in which

the petitioner claims to have been prejudiced." *Morrison*, 98 F.3d at 625 (internal citations

omitted).[2]

Accordingly, a Section 2255 petitioner is not automatically entitled to an evidentiary hearing, and should not receive one if his allegations are "vague, conclusory, or palpably incredible" rather than "detailed and specific." *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *see also United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915, 113 S.Ct. 322, 121 L.Ed.2d 242 (1992) ("Only where the section 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held.") (quoting *Machibroda*, 368 U.S. at 495, 82 S.Ct. 510); *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) ("[E]videntiary hearings are the exception, not the rule."). This is so even if the files and records of the case do not clearly rebut the allegations of the claim. *Id*. The party seeking an evidentiary hearing in a Section 2255 proceeding therefore shoulders a fairly high burden of demonstrating a need for such a hearing, and the decision whether to grant one is "committed to the district court's discretion." *Pollard*, 959 F.2d at 1031.

## IV: DISCUSSION

In his Section 2255 motion presently before the Court, Petitioner alleges violations of his Sixth Amendment right to effective assistance of counsel at the trial, sentencing, and appeals levels. *See* Pet'r Mot. at 7-21, 27-28. Petitioner also alleges that the Prosecutor engaged in gross misconduct through fabrication and deception, thereby abridging Petitioner's right to a fair trial. *See* Petitioner's Response to the Government's Opposition Brief to Said § 2255 ("Pet'r Reply") at

---

[2] This Court presided over Petitioner's trial and sentencing, and is also presiding over Petitioner's instant Section 2255 motion.

14-16.  Finally, Petitioner claims that the district court conspired with Petitioner's attorney and the

prosecutor to convict Defendant by improperly conducting voir dire.  *See* Pet'r Mot. at 22-23.  The

Court shall treat the substantive aspects of each claim in sequence, as well as any procedural aspects

that exist with respect thereto.

A.      *Ineffective Assistance of Counsel*

Petitioner's first theory is that his conviction and sentence for charges related to the incident

of August 9, 2001 should be vacated, set aside or corrected because Petitioner did not receive

effective assistance of counsel at trial, sentencing, or on appeal in violation of the Sixth Amendment.

Pet'r Mot. at 7-21.  Under the test for ineffective assistance of counsel, as laid out in *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a successful claimant

must meet two requirements.  First, the party must show that his attorney's deficient representation

fell below "an objective standard of reasonableness."  *Id*.  The attorney must have made "errors so

serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id*.

Legal advice is adequate unless counsel is not "a reasonably competent attorney" and the advice is

not "within the range of competence demanded of attorneys in criminal cases."  *Id.* (quoting

*McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A court conducting an inquiry should measure attorney performance under "prevailing

professional norms," and "[j]udicial scrutiny of counsel's performance must be highly deferential."

*Id*. at 688-90, 104 S.Ct. 2052.  As such, the petitioner must overcome a strong presumption that

counsel rendered effective assistance and "that counsel's conduct falls within the wide range of

reasonable professional assistance."  *United States v. Askew*, 88 F.3d 1065, 1070 (D.C. Cir. 1996)

(quoting *Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052).

Notwithstanding the burden to establish professionally defective assistance, the petitioner must also satisfy the second prong of the *Strickland* test – i.e., prejudice sufficient to create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694, 104 S.Ct. 2052.  This requires the petitioner to affirmatively show that counsel's mistakes were so serious "as to deprive the defendant of a fair trial."  *Id*. at 687, 104 S.Ct. 2052.  A showing of sufficient prejudice requires more than a mere allegation "that the errors had some conceivable effect on the outcome of the proceedings."  *Id*. at 693, 104 S.Ct. 2052.  Rather, a defendant must demonstrate that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id*. at 686, 104 S.Ct. 2052.

Lastly, a court deciding an ineffective assistance of counsel claim does not need to address both the deficient performance and prejudice components of the inquiry if an insufficient showing on one prong is evidenced.  *Id*. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  Accordingly, Petitioner must show that his trial counsel made professional errors sufficient to affect the outcome at trial.

     1.   <u>Mr. Moore's Performance at Trial</u>

Petitioner challenges the sufficiency of his trial counsel's performance, alleging that his trial counsel – Mr. Shawn Moore of the Federal Public Defender Service[3] – (1) failed to file pretrial

---

[3] Mr. Moore had primary responsibility for representing Petitioner in this case.  Affidavit of Shawn Moore at ¶ 2, attached to Gov't's Opp'n as Exhibit 2.  Although Petitioner mentions Michelle Peterson in his motion, her involvement is not material to Petitioner's allegations because Mr. Moore took over the case from Ms. Peterson before the litigation of any pretrial motions.

motions; (2) failed to conduct a pretrial investigation; (3) acted improperly with respect to *voir dire* by failing to object to certain jurors; (4) failed to adequately question Ms. Miller, the key witness against Petitioner; (5) declined to raise applicable defenses, such as intoxication and mental instability; (6) failed to address violations of Petitioner's rights; and (7) failed to summon a primary witness to testify.  Pet'r Mot.

a.    Failure to file pretrial motions

Petitioner alleges that his trial counsel, Shawn Moore, did not file any pretrial motions and also failed to file proper pretrial motions.  *Id*. at 4, 5, 24.  Petitioner indicates that this "was most definitely ineffective and prejudiced petitioner Vines."  *Id*. at 24.  Petitioner does not file any affidavits or provide any evidentiary support to further this argument.  The Government responds by submitting an affidavit from Moore, indicating that his predecessor filed a pretrial motion to suppress physical evidence and that Moore himself likely filed the motion to suppress a videotaped statement.  *See* Gov't's Opp'n at 5; Affidavit of Shawn Franklin Moore ("Moore Aff.") at ¶ 4.  The Government and Moore also contend that he argued both of these motions before the Court on February 15, 2002.  *See id.*  Finally, the Government contends that Moore raised "all of the issues before trial that [Moore] thought had a good-faith basis," and therefore, Petitioner's allegations of ineffective assistance on this matter are without merit.  Gov't's Opp'n at 5.  After reviewing the submitted affidavit and relevant portions of the trial record, the Court finds that trial counsel's performance was not deficient; rather, his level of representation fell within, if not above, "the wide range of reasonable professional assistance."  *See Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052.

Applying the *Strickland* analysis, it appears that Petitioner's counsel acted as a competent attorney, meeting an objective standard of reasonableness.  The trial record reflects, as the

Government argues, that Moore presented arguments on each of the two aforementioned motions during the February 15, 2002 motions hearing. 2/15/02 Tr. at 99-108. This suggests that counsel did present pretrial motions to aid his client's defense and "actively argued his client's position." *See United States v. Agramonte*, 366 F. Supp. 2d 83, 86 n. 4 (D.D.C. 2005). Furthermore, measuring the allegations in light of the strong presumption that counsel rendered reasonable assistance, *see Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, Petitioner provides no evidence to corroborate the claim that Moore's service was "measurably below the performance ordinarily expected of fallible lawyers, which is the test in this Circuit," *United States v. Patterson*, 652 F.2d 1046, 1048 (D.C. Cir. 1981). In contrast, the Government presents the sworn affidavit of Petitioner's counsel to demonstrate that he acted in good-faith to represent Petitioner, *see* Gov't's Opp'n at 5, and the record reflects Moore's efforts on his client's behalf. Petitioner has the burden of affirmatively showing that his counsel's actions failed to satisfy the "objective standard of reasonableness" under prevailing professional norms. *United States v. Smith*, No. 97-3121, 172 F.3d 922 (Table), 1998 WL 939501, at *2 (D.C. Cir. Dec. 14, 1998). It appears to the Court that Moore's approach in filing and arguing pretrial motions was both diligent and reasonable; as such, Petitioner has failed to establish deficient performance.

Moreover, while Petitioner does provide an example of what he considered to be deficient performance in pretrial motion filing, namely the failure to file a motion "to compel disclosure of the confidential informant who was Charlene Miller,"[4] Pet'r Mot. at 7, Petitioner "made no effort to

---

[4] Pursuant to the Court's January 3, 2002 Order directing the government to turn over discovery issues by January 8, 2002 (specifically, radio runs and 911 calls), Petitioner received this material well in advance of trial, which would have included the audio tape of Ms. Miller's 911 call on the day of the incident. Petitioner does not suggest that he did not receive such material nor does

show that, but for any of these alleged deficiencies, the outcome of his trial would have been

different," *Smith*, 1998 WL 939501, at *2. Instead, Petitioner merely concludes that "if it wasn't

for . . . [these] deficient performances, the results of the trial . . . would have been different." Pet'r

Mot. at 28. Whether further pretrial motions would have yielded a different outcome for Petitioner

"is a matter of speculation and precisely the sort of post hoc judgment that *Strickland* admonishes us

to avoid." *United States v. Toms*, 396 F.3d 427, 433 (D.C. Cir. 2005). Petitioner's inability to

support his conclusory contention that Moore's deficiencies resulted in the unfavorable outcome,

undermines his argument. The absence of a showing of prejudice alone would preclude the Court

from granting Petitioner's motion, *see Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; combined with

a failure to show objectively unreasonable representation, the Court simply cannot vacate, set aside,

or correct Petitioner's sentence based upon a theory of ineffective assistance of counsel for failing to

file pretrial motions.

> b.    *Failure to conduct pretrial investigation*

Petitioner's next ineffective assistance of counsel claim rests on the notion that his trial

counsel failed to conduct "any pretrial investigation." Pet'r Mot. at 5, 7. Petitioner does not

elaborate on this accusation, nor does he point to any particular fact or evidence that was

insufficiently investigated. The Government counters by citing Moore's affidavit, which indicates

---

he show that he did not know that Miller was said informant. From the discovery material,
Petitioner should have ascertained the identity of Miller as the informant, making a motion to
compel disclosure of Miller as the informant superfluous and unnecessary.

Even assuming for the sake of argument that Petitioner did not identify Miller from the
recording, Petitioner had ample opportunity to cross-examine Miller regarding the 911 call and
Petitioner's trial counsel took advantage of said opportunity. *See* Tr. at 1: 350. As such, it is not
self-evident to the Court nor does Petitioner affirmatively show that failure to compel disclosure of
Miller as the informant during pretrial in any way prejudiced Petitioner in the outcome of his case.

that counsel "did a thorough investigation of the facts surrounding the incident," including visiting the scene of the alleged crime, viewing photographs, and obtaining and reviewing all discovery from the Government.  Gov't's Opp'n at 6; Moore Aff. at ¶ 7.

The Court is guided by the D.C. Circuit's decision in *Askew*, which held that when a convicted defendant attempts to gain collateral relief based on failure of trial counsel to investigate, a court should require the petitioner to show "to the extent possible precisely what information would have been discovered through further investigation."  88 F.3d at 1073.  The Court explained:

> Any other rule would give defendants an incentive to present as little evidence as is necessary to create some doubt . . . . Although defendants are entitled to the benefit of a reasonable doubt at trial, an appellate court should not overturn a conviction simply because the defendant has teasingly suggested that there may be facts out there that his trial counsel could have discovered and that would have helped his case.  If any such facts exist, the defendant must identify them.

*Id*.

In the instant case, Petitioner has not set forth even a vague speculation as to what more investigation would reveal.  In light of the pleadings and affidavits submitted to the Court, Petitioner has failed to affirmatively overcome the presumption that his counsel acted appropriately in conducting pretrial investigation; nor is such failure to abide by an objective standard of reasonableness self-evident.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.  Moreover, given his trial counsel's general performance in arguing motions and cross-examining witnesses, it appears from the record that Petitioner's trial counsel was reasonably prepared to represent Petitioner based on pretrial investigation.

Finally, by failing to substantiate his arguments that trial counsel failed to conduct pretrial investigation, Petitioner invites the Court to speculate whether further investigation would undermine the Court's confidence in the outcome at trial, as required by *Strickland* for a finding of

12

ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In line with this Circuit's precedent, the Court must decline to speculate since Petitioner has failed to show "reasonable probability" that greater pretrial investigation would have produced a different result at trial. *See Toms*, 396 F.3d at 433; *United States v. Blackwood*, No. 88-3113, 904 F.2d 78 (Table), 1990 WL 78160, at *2 (D.C. Cir. June 11, 1990) ("no 'reasonable probability' that trial would have come out differently . . . but for the alleged errors"). As such, Petitioner has failed to satisfy both prongs of the *Strickland* test outlined above and his motion is denied on this claim.

c.       *Failure to properly conduct voir dire*

Petitioner's third claim of ineffective assistance of counsel is based on the argument that Moore acted improperly with respect to *voir dire*. Petitioner alleges several improprieties on the part of Moore. First, he argues that Moore failed to strike several allegedly biased jurors who expressed strong sentiments regarding domestic violence and police behavior during questioning by the Court. Pet'r Mot. at 9-10 (referring to jurors 905, 853 & 029)[5]. Second, Petitioner indicates that Moore permitted several other jurors to be impaneled on the jury even though no record of their responses to *voir dire* exists. *Id.* at 9, 19 (referring to jurors 072, 029, 086, 089 & 068). Third, Petitioner contends that Moore conspired with the Court and the prosecution to change the wording of *voir dire* questions to prejudice Petitioner. *Id.* at 19, 22, 23 (referring to questions 12 & 13).

---

[5] Petitioner also asserts that Juror 583 was improperly impaneled based upon his *voir dire* responses. A review of the record indicates that there is no evidence of a venireman with that juror number ever participating in the jury panel selection process. Given that no evidence supports Petitioner's claim with respect to "Juror 583," the Court therefore rejects Petitioner's "improper impanelment" claim with respect to this alleged individual.

The Government argues in response that none of these allegations are meritorious.  Gov't's Opp'n at 6.  As to the first two allegations, the Government contends that Moore "exercised his best legal judgment . . . in striking jurors who he thought should not be seated," *id.* at 6 & Moore Aff. at ¶ 6, and that while some jurors may not have responded to the *voir dire* questions, that fact, by itself, is insufficient to strike them from the panel, *id.* & Moore Aff. ¶ 11.  As to the third allegation, the Government contends that Moore did not partake in any conspiracy with the Court and the prosecutor to confuse the jurors by changing voir dire questions.  *Id.*  The Government insists that Moore's efforts to re-word several questions were made on behalf of Petitioner and actually conflicted with the Court's original wording.  *Id.* at 7 & Moore Aff. at ¶ 12.

Petitioner's claims may be summarily rejected because Petitioner does not show that counsel's behavior during *voir dire* constituted deficient performance; even assuming that counsel's decisions were in error, Petitioner fails to show that such deficient performance prejudiced him.[6] First, the decision by Petitioner's trial counsel not to strike the jurors who held opinions regarding crime, domestic violence, and the police was both reasonable and calculated.  The trial record indicates that for each of the jurors the Petitioner mentions, the Court, the prosecution, and Moore asked a variety of questions to ascertain the ability of each juror to determine the evidence with impartiality in spite of their prior experiences and viewpoints.  *See* Tr. at 1: 100-45.  Several jurors who expressed particularly potent feelings regarding the matters in the case were excused, with Moore playing an active role in moving to excuse when such excusal was warranted.  *Id.* at 136-38 (dismissing juror 767).

---

[6] The Court will discuss only those jurors who were actually impaneled on his case.

Other jurors, upon questioning by all sides, indicated under oath that their prior experiences would not impugn their ability to give Petitioner a fair trial. *Id*. at 100-45.[7] Under such circumstances, Petitioner does not affirmatively show that Moore failed to satisfy the "objective standard of reasonableness" under prevailing professional norms. *Smith*, 1998 WL 939501, at *2. Considering the limits placed on counsel to strike jurors and the likelihood that potential jurors would express strong sentiments on salient issues, such as domestic violence, firearms, and law enforcement, Moore's agreement to the impaneling of aforementioned jurors was competent and well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

Even assuming *arguendo* that trial counsel failed to properly object to the impaneling of certain jurors, Petitioner does not establish that such failure prejudiced him. Petitioner has not provided the Court with a sound basis for concluding, as it must before setting aside a conviction based on a claim of ineffective assistance of counsel, that if not for trial counsel's failure to object to these particular jurors, the outcome of trial would be different.[8] The Court must again decline to

---

[7] Upon questioning by the Court, Moore, and the prosecutor, jurors 029 (ultimately, an alternate) and 905, impaneled as Jurors #5 and #13 respectively, indicated that although they held strong feelings regarding domestic violence due to personal experiences, they could put such sentiments aside and judge the case solely on its merits. Tr. 1: 101, 134. Juror 853 (ultimately, an alternate), impaneled as juror #7, expressed disillusionment with law enforcement personnel and indicated his own strong feelings against domestic violence; however, this juror also indicated that his feelings would not cloud his ability to consider the evidence and decide the case on its merits. Tr. at 1: 144.

[8] The Court also notes that since jurors 029 and 853 were impaneled as jurors #5 and #7, respectively, they occupied the alternate juror positions and, therefore, *did not participate* in the deliberations in Petitioner's case. As such, trial counsel's objection to these two jurors would not have yielded a different outcome as these two jurors were not involved in the rendering of the verdict. This point further undermines Petitioner's contention that Moore's failure to object

speculate whether different jurors within the same jury pool, dealing with the same facts and law, would have found differently. *See Toms*, 396 F.3d at 433. As such, Petitioner's claim does not satisfy his burden.

Second, as to Petitioner's contention that certain jurors were impaneled without having gone through *voir dire*, the record indicates otherwise. Although Jurors 072 and 086 had no information in response to the Court's *voir dire* questions, they were brought before the Court and counsel; when asked, they responded that they did not have strong opinions regarding the issues involved in the case, and these responses are on the record. *See* Tr. at 1: 86, 108. Juror 089 was actually questioned regarding his responses to the satisfaction of both the Court and counsel in that he did not respond affirmatively to any questions intended to elicit possible bias. *See id.* at 1: 96, 126, 128. Petitioner misinterprets the lack of strenuous questioning of the jurors and acquiescence to their impaneling as a failure to conduct *voir dire*, Pet'r Mot. at 19, whereas in actuality, these jurors were asked to respond to all of the relevant questions and simply did not indicate a preconceived bias for or against Petitioner. In light of the strong presumption that counsel rendered effective assistance, Moore's behavior in this matter satisfied the *Strickland* standard. As before, Petitioner has failed to show how objection to the aforementioned jurors would have changed the outcome of the case. *See Strickland*, 466 U.S. at 690, 105 S.Ct. 2052.

Petitioner's third allegation that Moore conspired with the Court and the prosecution to confuse the jurors is entirely without merit. The record reflects, as Petitioner has himself cited, that Moore engaged in a lengthy discussion with the Court regarding the wording of questions 12 and

---

prejudiced him.

13.  2/15/02 Tr. at 109-16.  Moore attempted to narrow the questions to make them more applicable

to this case, without suggesting to the jury that Petitioner would argue that intoxication was a

defense for the crime committed.  *Id.*  No evidence is forthcoming to support Petitioner's position

that Moore conspired with the Court in formulating and rearranging said questions.  These actions

do not constitute "errors so serious that counsel was not functioning as the 'counsel' guaranteed by

the Sixth Amendment" and the Court must be highly deferential in its scrutiny of counsel's

performance.  *Strickland*, 466 U.S. at 687-90, 105 S.Ct. 2052.

      Moreover, Petitioner states that Moore's alleged conspiratorial behavior "is total

ineffectiveness and prejudice to petitioner" and prevented Petitioner from "know[ing] if the jurors

were bias[ed]" against him.  Pet'r Mot. at 23.  Coupled with the fact that Petitioner listened to the

jurors' responses during *voir dire* and participated in the decision to make peremptory strikes, such

conclusory statements do not affirmatively show that Petitioner was prejudiced by the alleged failure

to object to certain jurors and are insufficient to undermine the Court's confidence in the outcome of

trial.  *See Strickland*, 466 U.S. at 690, 694, 104 S.Ct. 2052.  For these reasons, the Court finds that

Petitioner's claim that trial counsel provided ineffective assistance in conducting *voir dire* is without

merit.

      *d.*     *Failure to properly question Ms. Miller*

      In addition to the claims described above, Petitioner claims that trial counsel provided

ineffective assistance at trial by failing to question prosecution witness Charlene Miller.  Pet'r Mot.

at 7, 21.  The Government responds by indicating that Moore "worked diligently to discredit Ms.

Miller's testimony."  Gov't's Opp'n at 8 & Moore Aff. at ¶ 15.  In support, the Government refers to

Moore's cross-examination of Miller during which he tried to establish that she brought the gun into

the house, that she had made inconsistent statements before the grand jury, and that she had lied to

the police.  *Id*.  The Government indicates that this was done to show that "Miller was not a credible

witness" and that she, rather than Petitioner, brought the gun into the apartment.  *Id*.

The entirety of the trial record undermines Petitioner's claim by confirming the

Government's contention that Moore questioned Miller in an effort to discredit her as a witness.  The

record shows that Moore attempted to question Miller regarding her drug use, her personal history

with Defendant, and her sometimes vague recollections of the incident.  Tr. at 2: 320-351.

Furthermore, he attempted to impeach Miller based on her Grand Jury testimony and her failure to

initially disclose to the police that she placed the 911 call.  *Id*.  In light of the total absence of factual

support for Petitioner's claims, the Court cannot find that Moore provided ineffective assistance

under the *Strickland* test and will "decline to second-guess trial counsel's strategy" in cross-

examining Miller.  *See United States v. Glover*, 153 F.3d 749, 758 (D.C. Cir. 1998).

> e.    *Failure to raise applicable defenses*

Petitioner's next ineffective assistance claim against trial counsel asserts that Moore failed

"to use [Vines'] intoxification as a defense, and they didn't even raise intoxification as a defense"

and that Moore "failed to consider other defenses."  The Government argues that Moore "made

several arguments concerning Defendant's intoxication" and raised "all defenses for which he

thought there was a good faith basis."  Gov't's Opp'n at 7 & Moore Aff. at ¶ 14.  The Government

points out that since Petitioner was charged with general intent crimes, the Court ruled that

voluntary intoxication was not a viable defense, thereby precluding Moore from raising that issue.

*Id*.  The Government also states that in spite of the latter ruling, Moore nevertheless moved to

suppress the videotape statements made by Petitioner at the police station while allegedly

intoxicated.  *Id*.  Pursuant to that motion to suppress, the Government indicates that Moore cross-examined Metropolitan Police Department investigators Franchak and Mouton about the voluntariness of Petitioner's statements and his mental state at the time of the interview.

The Government's arguments are persuasive.  The record reflects the accuracy of these points and shows that Moore acted competently to represent Petitioner by moving to suppress his statements on the videotape, 2/15/02 Tr. at 4, and cross-examining the investigators who oversaw Petitioner's interview after he was arrested.  Tr. at 2: 384-86.  As such, it is evident that Moore asserted the intoxication defense and used it within reason.   Petitioner's allegation that Moore did not consider defenses other than intoxication, and therefore provided ineffective assistance, must also be denied.  Petitioner has an affirmative duty to show that Moore failed to meet the objective standard of reasonable representation, under prevailing professional norms.  *Smith*, 1998 WL 939501, at *2.  Petitioner suggests one alternate defense – mental incompetence – to argue that a reasonably capable attorney would have raised this issue.  Pet'r Reply at 5.  The record reflects, however, that two separate examinations revealed Petitioner to be mentally competent to stand trial and to be sentenced.  *See* 12/3/01 & 9/23/02 Reports from D.C. Department of Mental Health. Indeed, the mental health evaluation dated September 23, 2002 in fact found that "any significantly reduced mental capacity Mr. Vines may have been suffering at the time he committed the offenses for which he has been found guilty was not the result of mental illness."  *Id*.  Moreover, the Government submitted Moore's affidavit indicating that Moore presented all defenses that he felt had a good faith basis, *see* Moore Aff. at ¶ 14.  Given these facts, the Court cannot find that Moore's failure to raise indeterminate defenses fell outside the range of reasonable representation under prevailing professional norms.

19

Even assuming for the sake of argument that trial counsel's advocacy of possible defenses constituted deficient performance, Petitioner does not establish that such failure prejudiced him. Petitioner has not provided the Court with any evidence to support his conclusion that had Moore raised the intoxication or other defenses, the result at trial would have been otherwise, as required under the second prong of *Strickland*. 466 U.S. at 693, 104 S.Ct. 2052. Considering that Moore could not raise the intoxication defense and that Petitioner was held to be mentally competent, it is most likely that the result would have been identical. The Court will therefore deny Petitioner's motion on this claim.

> f.      Failure to address violations of Petitioner's rights

Petitioner alleges that his trial counsel "knew that Vines was falsely arrested" and "knew that petitioner Vines right to be arraigned was violated," but failed to file proper motions for said violations. Pet'r Mot. at 19, 24-25. Petitioner supports the false arrest allegation by asserting that "some of the police officers said that Vines was arrested for a bullet" in his apartment and other officers indicated that Vines was arrested "for carrying a pistol without a license." *Id.* at 19. Petitioner then indicates that Moore knew "that petitioner had not been arraigned . . . but [he] proceeded on with trial." *Id.* at 24.

Petitioner's claim that his trial counsel provided ineffective assistance may be summarily rejected because Moore had no knowledge of whether Petitioner was falsely arrested seeing as Moore was not present at the time of the arrest, and could not corroborate either justification for the arrest. *See* Gov't's Opp'n at 8 & Moore Aff. at ¶ 10. Petitioner has not affirmatively shown that Moore acted unreasonably or incompetently as an attorney in his representation of Vines and the Court must be highly deferential to the presumption that counsel provided appropriate legal

20

assistance.  *See Strickland*, 466 U.S. at 688-90, 104 S.Ct. 2052; *Askew*, 88 F.3d at 1070.

Furthermore, Petitioner fails to show that there is a reasonable probability that inquiry into Vines'

allegations of false arrest would undermine the Court's confidence in the outcome at trial.

*Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

Petitioner's contention that his sentence should be vacated because his attorney failed to

contest the absence of an arraignment hearing should also be denied.  The trial record indicates that

Petitioner was arraigned before Magistrate Judge Alan Kay on November 15, 2001; six days after

an indictment was filed against Petitioner.  *See* Tr. at 1:26-27 (deputy courtroom clerk for the clerk

indicates date of Petitioner's arraignment for the record).  Moreover, although not reflected on the

online case docket, a criminal blotter filed in Petitioner's physical court file jacket also reflects the

fact that Petitioner was arraigned on November 15, 2001 before Magistrate Judge Kay.  Therefore,

Petitioner's claim is factually inaccurate and without merit.

Even assuming *arguendo* that Petitioner was not properly arraigned, the overwhelming body

of jurisprudence indicates that the absence of a formal arraignment does not deprive "the accused of

any substantial right" or change the course of trial to his disadvantage "so long as it appears that the

accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in

the prosecution."  *United States v. Joyner*, 201 F.3d 61, 79 (2d Cir. 2000) (quoting *Garland v.*

*Washington*, 232 U.S. 642, 645, 34 S.Ct. 456, 58 L.Ed. 772 (1914)); *see United States v. Cook*,

972 F.2d 218, 222 (8th Cir. 1992) ("an arraignment is not required where the defendant has had

sufficient notice of the accusation and an adequate opportunity to defend himself at trial") (citing

*Garland*, 232 U.S. 642, 34 S.Ct. 456); *United States v. Romero*, 640 F.2d 1014, 1015 (9th Cir.

1981) ("vacating convictions for lack of formal arraignment proceedings is predicated on the

existence of possible prejudice") (citing *Garland*, 232 U.S. 642, 34 S.Ct. 456).  In accordance, the

Fifth Circuit has held that where an appellant did not allege ignorance of the offense or that he was

hindered in preparing a defense and had a full and fair opportunity to litigate, the technical lack of

formal arraignment proceedings did not prejudice the appellant.  *United States v. Rogers*, 469 F.2d

1317 (5th Cir. 1972) (citing *Garland*, 232 U.S. 642, 34 S.Ct. 456).

In light of both the record that he actually was arraigned and the relevant case law, the Court

is not persuaded that Petitioner has a basis to argue that the issue of arraignment in his case

constituted ineffective assistance under the prejudice prong of *Strickland*.  466 U.S. at 687, 104

S.Ct. 2052.  Moreover, Petitioner does not allege that he was ignorant of the offense he was charged

with, nor does he suggest that he was prevented from mounting an adequate defense.  *See* Pet'r Mot.

at 24.  As such, there is no evidence to demonstrate that Petitioner was prejudiced and/or was

negatively affected in his ability to litigate.  *See Romero*, 640 F.2d at 1015 (finding lack of

arraignment non-prejudicial because accused was aware of the charges against him, had assistance

of appointed counsel and could adequately defend himself).  Accordingly, even assuming *arguendo*

that Moore allegedly erred in omitting the arraignment issue, Petitioner has failed to affirmatively

show that the outcome of trial would have been different.  *See Strickland*, 466 U.S. at 694, 104

S.Ct. 2052; *Smith*, 1998 WL 939501, at *2.  Since the Court finds a lack of sufficient prejudice to

Petitioner, the Court shall deny this claim.  *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

g.      *Failure to call Officer Barnes to testify*

Petitioner also accuses Moore of ineffective assistance of counsel based upon Moore's

failure to call Officer Tommy Barnes to testify at the trial.  Pet'r Mot. at 20, 26.  Petitioner argues

that Barnes served as a primary witness against Vines at the preliminary hearing to show cause for

the arrest, but was not summoned to trial by either the prosecution or Moore.  *Id.* at 26.  Petitioner

contends that this failure violated "his right to confront his accusers."  *Id.* at 20.  In the context of

this claim, the Court finds once again that Petitioner has failed to carry his burden of demonstrating

prejudice under the *Strickland* ineffective assistance analysis.

As previously discussed, to demonstrate prejudice, the Petitioner must affirmatively show "a

reasonable probability" that "but for counsel's unprofessional errors, the result of the proceedings

would have been different."  466 U.S. at 694, 104 S.Ct. 2052.  To prove that particular testimony

would affect the outcome of trial, "a petitioner ordinarily must show . . . that the testimony of

uncalled witnesses would have been favorable."  *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th

Cir. 1990) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Considering the

strong presumption that an attorney's decision in not calling a witness is reasonable and strategic,

*see Strickland*, 466 U.S. at 689-90, 104 S.Ct. 2052, a petitioner must specify or bring to the court's

attention the evidence which a potential witness would reveal that could affect the outcome of

proceedings.  *United States v. Debango*, 780 F.2d 81, 86 (D.C. Cir. 1986); *see United States v.*

*Giangrosso*, 779 F.2d 376, 381 (7th Cir. 1985) (holding that petitioner must specify what

prejudicial information potential witness would reveal about her character).  Failure to introduce

such evidence, undermines a petitioner's "claim that he was prejudiced by counsel's failure to

locate" a witness.  *Debango*, 780 F.2d at 86.

Here, Petitioner has failed to suggest what evidence Barnes could provide that would assist

Petitioner's case and that would not be duplicative of the testimony given by several other officers.

In fact, there is a high probability that since Barnes testified against Petitioner at the preliminary

hearing, any new testimony would be damaging to Petitioner and result in the same outcome.  As

23

such, the Court finds that it was objectively reasonable for trial counsel "to decide that the potential

costs of calling the witness outweighed the potential benefits,"  *States v. Staples*, 410 F.3d 484,

488-89 (8th Cir. 2005), and that the decision not to call Barnes was not prejudicial to Petitioner.

Therefore, the Court shall deny Petitioner's motion with respect to Moore's "failure to call Officer

Barnes" claim.

2.    <u>Mr. Rudasill's Performance at Sentencing</u>

Petitioner next argues that the performance of his counsel at sentencing – James Rudasill, Jr.

– was deficient.  Pet'r Mot. at 9.  He contends that Rudasill permitted Petitioner's sentence to be

enhanced on charges arising from a conviction in 1982, and that such enhancement was

inappropriate due to the staleness of the charges and the fact that they were not alleged in the

indictment.  The Government responds by referencing pleadings filed by Rudasill prior to sentencing

in which counsel directly addressed the issues that Petitioner is now alleging were neglected.  *See*

Gov't's Opp'n at 9.  In Rudasill's pleading entitled "Defendant's Objections to Presentence

Investigation Report and Motion to Determine Extent of Mental Health Sentencing" Factor ("Def's.

Obj. Memo"), under subheading "Offense Level Computations," Rudasill wrote:

> Defendant objects to the enhancement of his sentence for conviction of [18 U.S.C.
> 922(g)(1)] under 18 U.S.C. 924(e) as an armed career criminal pursuant to U.S.S.G.
> 4B1.4(a) and (b)(3)(A) resulting in the assignment of a Total Offense Level of 34.
> Specifically, defendant objects to the counting of his two Daytime Housebreaking
> convictions (Dkts. No. 27091-8 and 27191-81) in the Circuit Court of Montgomery
> County, Maryland, on March 23, 1982 on the basis of staleness, i.e. these
> convictions are outside of the 15 year period of accountability set forth in U.S.S.G.
> 4a1.2(e)(1).

Pet. Obj. Memo at 2.

Furthermore, under subheading "Criminal History Computation," Rudasill argued that, "[t]he Defendant contends [the] criminal history category should be reduced by the 4 points assessed for the two 21 year-old Daytime Housebreaking convictions in Montgomery County." *Id.* at 3. Moreover, under subheading "Sentencing Options," Rudasill states that, "[f]or the reasons stated above, defendant objects to the Probation Officer's computation of his Total Offense Level of 34 and a Criminal History Category of VI . . . ." *Id.* The Court is aware that these objections were incorporated into the Second Revision of the Presentence Investigation Report ("PSI Report") dated July 5, 2002, as the Government suggests. *See* 7/5/02 revised PSI Report; Gov't's Opp'n at 10.

The Government also indicates that prior to sentencing, Rudasill filed a pleading entitled "Defendant's Motion for Downward Departure Pursuant to U.S.S.G. § 4A1.3 – Over-Representation of Criminal History Category" ("Downward Depart. Memo"). In that pleading, Rudasill argued that based on the staleness and "relatively unaggravated" offense level of Petitioner's other convictions, that the Armed Career Criminal enhancement over-represented Petitioner's criminal history, and therefore, "a downward departure is warranted." *See* Downward Depart. Memo at 3-4; Gov't's Opp'n at 10.

After reviewing the submitted pleadings and portions of the record highlighted by counsel, the Court finds that Petitioner's counsel's performance at sentencing was not deficient. Instead, the facts clearly support the Government's position that Rudasill's representation of Petitioner was reasonable and competent. Rudasill raised precisely those particular issues that Petitioner wanted to be raised, thereby wholly undermining Petitioner's instant argument that his counsel's performance at sentencing was inadequate. Additionally, Petitioner has failed to demonstrate that his counsel's failure to object to enhancement on the charges prejudiced him because the record shows that his

counsel actually did object and the sentencing outcome was the same.  *See Strickland*, 466 U.S. at

686, 104 S.Ct. 2052 (holding that mere conclusory assertions do not satisfy heavy burden of

showing prejudice).  Since the record directly contradicts Petitioner's claims, he cannot affirmatively

establish that his counsel provided ineffective assistance such that the Court's confidence in the

outcome of the proceeding is undermined, and his motion is therefore denied.

3.    Mr. Saunders' Performance on Appeal

Petitioner also alleges that his appellate counsel – Thomas J. Saunders – failed to provide

Petitioner with adequate representation on appeal.  Pet'r Mot. at 27-28.  Citing *Evitts v. Lucey*, 469

U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), Petitioner indicates that he was entitled to

effective assistance of counsel on a first appeal as of right and that he was denied such a right

because Saunders "did not raise the Constitutional issues in petitioner Vines[sic] case."  *Id*.

Petitioner does not specify any constitutional issues that Saunders failed to raise.

The Supreme Court has held that "nominal representation on an appeal as of right – like

nominal representation at trial – does not suffice to render the proceedings constitutionally

adequate."  *Evitts*, 469 U.S. at 396, 105 S.Ct. 830.  Nonetheless, appellate counsel "should not raise

every nonfrivolous claim," but should select specific issues to "maximize the likelihood of success

on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  To

determine whether appellate counsel provided ineffective assistance, courts utilize the same analysis

by which trial counsel is judged.  *Agramonte*, 366 F.Supp.2d at 86 (citing *Smith*, 528 U.S. at 280,

120 S.Ct. 746).  As such, "in order to prevail on an ineffective assistance of appellate counsel claim,

a defendant must" demonstrate deficient performance and prejudice, in line with *Strickland*.  *Id*.

26

The Court rejects Petitioner's claim here because he does not show that counsel's failure to raise unmentioned constitutional issues constituted deficient performance, nor that he was prejudiced by the alleged lack of assistance.  The Government's opposition to this Motion and the attached affidavit and notes taken by Saunders ("Saunders Aff.") demonstrate that Petitioner's appellate counsel closely reviewed the trial transcript in search for appealable issues.  Gov't's Opp'n at 11 & Ex. 4 (Saunders Aff. at ¶ 3).  Saunders communicated several times with Petitioner, writing him to answer procedural questions and presenting issues for appeal, and also holding a telephone conference with Petitioner to discuss possible appellate issues.  *Id*. & Saunders Aff. at ¶ 4.  The Government attaches a copy of a follow-up letter from April 16, 2003, wherein Saunders wrote Petitioner to confirm his understanding of the issues that Vines wanted to be raised and to ask Petitioner if any additional issues existed; Saunders indicated the intent to raise three issues: (1) whether the Government in its closing argument improperly argued in an inflammatory matter; (2) whether the Court erred in giving an instruction to the jury over objections of the defense when informed by the foreperson that one juror was not deliberating; and (3) whether the Court erred in sentencing in determining that Mr. Vines was a career criminal and was subject to a minimum mandatory sentence. Gov't's Opp'n at 11 & Saunders Aff. at ¶ 5.  The Government indicates that Petitioner never responded to this inquiry.  *Id*.

After Saunders filed the appellate brief, raising the constitutional issues that, in his judgment, were "colorable" given the record, Saunders Aff. at ¶ 6, Petitioner wrote to Saunders to express gratitude for his representation  and to commend him on finding "the needle in the haystack" of constitutional issues.  Gov't's Opp'n at 12; Saunders Aff. at ¶ 7; 6/1/03 Letter from Vines to Saunders.

In light of the record, the Court cannot find that Saunders' advice and representation fell outside the wide range of competent behavior, under prevailing professional norms. *See Askew*, 88 F.3d at 1070. Petitioner's arguments are conclusory in nature and cannot overcome the strong presumption that Saunders acted competently on Petitioner's behalf. *See id*. Petitioner has failed to affirmatively demonstrate that Saunders failed to raise any constitutional issues that were either suggested by Petitioner or cogent. Moreover, assuming *arguendo* that Saunders failed to raise appropriate issues on appeal, Petitioner does not even allege that such failure prejudiced him in any concrete manner. He simply asserts that if not for the attorney's deficient performance, the outcome of the appeal would have been different. Pet'r Mot. at 28. As such, Petitioner does not affirmatively demonstrate that but for the alleged errors, the outcome on appeal would be different. *Blackwood*, 1990 WL 78160, at *2. For these reasons, the Court finds that Petitioner's claim that appellate counsel provided ineffective assistance is without merit.

B.     *Prosecutorial Misconduct*

Petitioner next alleges that his conviction and sentence should be vacated, set aside, or corrected due to prosecutorial misconduct by Mr. David Gorman, the prosecutor who handled the trial in his criminal case. First, Petitioner contends that Gorman presented false testimony concerning the ammunition that was admitted into evidence. Gov't Opp'n at 14-15; *see* 6/28/05 Defendant's Supplemental Memo ("Pet'r Suppl.") at 3. Petitioner indicates that Gorman misrepresented to the Court and trial counsel the reason why the bullet found on the floor of Petitioner's apartment was taken apart, but does not specify that reason. *Id*. In response, the Government and Gorman contend that in the process of being analyzed, the bullet was appropriately disassembled by the FBI to determine whether it matched the other bullets in the gun, and therefore,

28

there was no misconduct.  *See* Gov't's Opp'n at 14 & Affidavit of David Gorman ("Gorman Aff.")

at ¶ 4.  Second, Petitioner argues that Gorman deceived the Court by allowing Miller to testify that

Petitioner put a gun to her head and pulled the trigger.  Gov't's Opp'n at 15; Pet'r Suppl. at 7.  The

Government counters by indicating that Gorman believed and still believes that Miller's testimony

was a truthful and accurate account of the incident.  Gov't's Opp'n at 15; Gorman Aff. at ¶ 7.

Finally, Petitioner states that Gorman schemed and committed fraud in conspiracy with the Court

and trial counsel Moore in agreeing to disclose information about the disassembled casing as a

means to unjustly convict Petitioner.  Gov't's Opp'n at 15; Pet'r Suppl. at 8, 14.  The Government

indicates that while Gorman worked to convict Petitioner, no fraud or conspiracy was involved.

Gov't's Opp'n at 15; Gorman Aff. at ¶¶ 8-9.

  Upon initial review, the Court notes that Petitioner did not suggest or raise any issues of

prosecutorial misconduct on direct appeal to the United States Court of Appeals for the District of

Columbia Circuit.  It is well-established that where a petitioner "failed to raise [an] argument on

direct appeal, he may raise this claim collaterally (that is, pursuant to § 2255) only if he (1) can

demonstrate good cause for his failure to raise the issue on appeal, and (2) show that the issue he is

raising caused actual prejudice."  *Cassell v. United States*, 398 F. Supp. 2d 193, 199-200 (D.D.C.

2005) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714

(2003)); *see United States v. Perkins*, 161 F.3d 66, 71 (D.C. Cir. 1998) ("where a defendant has

procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in

habeas only if the defendant can first demonstrate cause and actual prejudice) (quoting *Bousley v.*

*United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)); *but see United States*

*v. Green*, No. Cr. 90-0553-01, 1999 WL 33326726, at *3 n.3 (D.D.C. Apr. 28, 1999) (Oberdorfer,

J.) (holding that *Bousley* is only applicable to "permissibility of post-*Bailey* collateral attacks on §

924(c)(1) convictions obtained pursuant to guilty pleas.").

Petitioner has failed to demonstrate good cause for his failure to raise the issue of

prosecutorial misconduct on appeal, instead alleging that his appellate counsel provided ineffective

assistance – a claim that the Court has found to be without merit.  Additionally, Petitioner does not

assert that the alleged misconduct was prejudicial to him, nor is evidence presented to support such

an argument.  Therefore, due to Petitioner's procedural default in failing to raise this issue on

appeal, Petitioner should be barred from raising it collaterally under Section 2255.

Assuming *arguendo* that Petitioner may pursue this argument nonetheless, the claim still

fails.  Petitioner does not advance any evidence to support his position that Gorman's statements

regarding the analysis of the bullets was fraudulent or inaccurate.  In contrast, the Government

provides the sworn statement of Gorman attesting to the accuracy of his communication in court.

*See* Gorman Aff. at ¶ 2.  As such, Petitioner has failed to meet his "burden of sustaining his

contentions by a preponderance of the evidence."  *Smith*, 2005 WL 1313445, at *2.  Similarly,

Petitioner's allegation that Gorman permitted Miller to lie on the stand is also unsupported, and runs

in opposition to the Government's position that Gorman believed the testimony to be accurate and

truthful.  *See* Gov't's Opp'n at 15; Gorman Aff. at ¶ 7.  Petitioner does not show "why the

government would have known that such testimony was false," *see Smith*, 1998 WL 939501, at *2,

and his conclusory assertions that Miller was fabricating the entire account of the events is

unconvincing without such evidence.

Petitioner's final contention that Gorman schemed and conspired with trial counsel and the

Court is also entirely without merit.  Petitioner refers to several instances in which the Court and the

opposing parties endeavored to resolve possible disputes before they came before the jurors. *See* Pet. Mot. at 23-25; Pet. Suppl. at 14. At no point does the record suggest that any of the parties involved were engaging in a conspiracy to deprive Petitioner of his constitutional right to a fair trial. As such, even if the Court was to find that Petitioner was not barred from raising the issue of prosecutorial misconduct collaterally, his claim would be denied.

### C.    *Conspiracy by the Court*

Petitioner's final allegation asserts that the Court conspired with the prosecutor and trial counsel in conducting *voir dire*. As discussed in Section III(A)(1)(c), Petitioner contends that the Court "transformed" two of the questions and rearranged the order of said questions, thereby prejudicing Petitioner. Pet'r Mot. at 22-23. The Court bears the affirmative duty "to make inquiry" to clarify questions and "restore order out of confusion in the interest of justice to all parties to the proceeding." *Patterson*, 652 F.2d at 1048. In discussing the wording of the questions with the prosecutor and trial counsel, the Court aimed to minimize confusion for the jurors and to alleviate the concerns of the opposing parties in the pursuit of justice. Petitioner has failed to show by a preponderance of the evidence that the Court's actions were perpetrated as part of a conspiracy. Therefore, the Court shall deny Petitioner's claim.

### V: CONCLUSION

Petitioner's motion for collateral relief pursuant to 28 U.S.C. § 2255 does not mount a challenge sufficient to convince the Court that Petitioner's conviction and sentence were fundamentally unfair or imposed in violation of the United States Constitution. Petitioner's claims, based on numerous allegations of ineffective assistance of counsel, are without merit. Moreover, Petitioner does not establish, such that if not for his counsels' alleged deficiencies, the result of

Petitioner's trial, sentencing, and appeal would have been different.  Petitioner's claims based on

prosecutorial misconduct and conspiracy by the Court with counsel also lack merit; indeed, such

unfounded claims flow from rulings that the Court made on the record during court proceedings

with Petitioner present.  The Court finds that the filings and record of this matter show conclusively

that Petitioner is not entitled to the requested relief, and therefore there is no need for a hearing on

the instant motion.  For the reasons set forth above in this Memorandum Opinion, the Court shall

deny the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody pursuant to 28 U.S.C. § 2255.  An appropriate Order accompanies this Memorandum

Opinion.


Date:   July 6, 2006


_____
                    /s/
                    COLLEEN KOLLAR-KOTELLY
                    United States District Judge